FILED

APR 2 1 2005

U.S. BANKRUPTCY COURT FOR THE DISTRICT OF ARIZONA

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 7 |
| MERLIN GROVER HINRICHS, | No. 4-04-02131-SV-JMM |
| Debtor. | Adversary No. 4-04-ap-00077 |
| ROBERT HOOKER, ESQ., dba LAW OFFICE OF ROBERT HOOKER, | **MEMORANDUM DECISION** |
| Plaintiff | |
| vs. | |
| MERLIN GROVER HINRICHS, | |
| Defendant. | |

The trial in this adversary proceeding was held on April 12, 2005. The Plaintiff was represented by Eric Slocum Sparks; the Debtor-defendant represented himself. After considering the testimony, evidence, and applicable law, the court now rules. Its findings of fact and conclusions of law are set forth herein. FED. R. BANK. P. 7052. A separate judgment will issue. FED. R. BANK. P. 9021.

## I. JURISDICTION

This proceeding is a "core" matter over which this court has jurisdiction. 28 U.S.C. §§ 1334; 157(b)(I) and (J).

## II. ISSUES

1. Whether Debtor's conduct prohibits him from discharging debts and obligations due Plaintiff under 11 U.S.C. § 523(a)(2)(A).

h:\wp\orders\hinrichs

2. Whether Debtor's conduct prohibits him from discharging debts and obligations due Plaintiff under 11 U.S.C. § 523(a)(2)(B).

3. Whether Debtor made knowing and fraudulent false oaths or accounts. 11 U.S.C. § 727(a)(4)(A).

4. Whether Debtor has failed to explain satisfactorily any loss of assets or deficiency of assets to meet Debtor's liabilities. 11 U.S.C. § 727(a)(5).

## III. FACTS

The gravamen of this complaint concerns attorney Robert Hooker's non-dischargeability complaint for unpaid attorneys' fees of $86, 215.91 (Ex. 43). The fees were generated by Mr. Hooker's representation of the Debtor in a Cochise County criminal action. That representation lasted one year, from February 20, 2002, until approximately February 26, 2003. (Ex. 49).[1]

On February 20-22, 2002, the parties entered into a written fee agreement wherein Mr. Hooker agreed to represent the Debtor, upon receipt of a $10,000 retainer. Thereafter, Mr. Hooker would bill the Debtor monthly, on an hourly rate basis. Each monthly statement could be drawn down against the retainer until it was exhausted. When the trust account retainer reached a balance of $3,000, the Debtor was required to replenish it back to the $10,000 amount. (Ex. 8)

There is no issue in this case that Mr. Hooker failed to perform legal services for the Debtor. The only non-dischargeability issue is whether the Debtor mislead Mr. Hooker into continuing to perform in such a manner that would render the balance due Mr. Hooker nondischargeable.

---

1 Mr. Hooker filed a motion to withdraw as counsel on January 30, 2003, but the Cochise County court's docket does not reflect that it was ever granted prior to the case's termination on February 26, 2003 (Ex. 49).

The fee agreement provided that if any statement was not paid within 15 days, that Mr. Hooker was permitted to withdraw from the case. (Ex. 8, Art. VI.)

Written discussions, as well as oral ones, concerning the fee schedule and payments due, began prior to representation, and continued systematically throughout the case's duration. The evidence reflected at least 25 items of written communication between the parties on the subject of fees. (See Ex. 1, 2, 3, 4, 5, 7, 9, 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, and 28.) Six of the 25 written communications occurred before Mr. Hooker accepted the representation on February 22, 2002. (See Ex. 1, 2, 3, 4, 7, and 8.) These pre-representation communications detailed how the retainer and hourly fee were to be construed, with Mr. Hooker noting that, in his experience with this type of case, "(m)y concern is that once we get started, we will blow through the $10,000 retainer pretty fast and I do not want to wait this long to get it replenished as required under the requirement." (Ex. 4; see, also, Ex. 5.) As Mr. Hooker noted, on February 15, 2002, "(m)y experience . . . is that it will cost more than $10,000 by quite a bit." (Ex. 5.) Mr. Hooker noted that he thought $25,000 for the entire case was a reasonable estimate of what the total fees might be. (Ex. 5.)

Despite the parties' agreement to require Debtor to replenish the retainer account when it was drawn down to a $3,000 balance, attorney Hooker elected to carry the Debtor while continuing to perform legal services. Reviewing the correspondence between the parties, and Mr. Hooker's increasing bills, the following picture evolves:

| Date | Item | Contents | Balance | Past due (days) | Ex. |
|---|---|---|---|---|---|
| 02/20/02 | Retainer Agreement | $10,000 retainer; hourly basis; replenish $10,000 at $3,000 level | -0- | n/a | 8 |
| 03/07/02 | E-mail from Hooker | Representation will likely cost more than $10,000 | -0- | -0- | 5 |
| 03/09/02 | E-mail from Debtor | I expect another $10,000 from tax refund. | -0- | -0- | 9 |
| 03/12/02 | Statement | Itemization of legal services; $2,461.54 drawn down | -0- | -0- | 43 |

| | | | | | |
|---|---|---|---|---|---|
| 04/04/02 | E-mail from Debtor | Still expecting $10,000 from tax refund. | -0- | -0- | 11 |
| 04/04/02 | Statement | Itemization of legal services; $2,051.24 drawn down. | -0- | -0- | 43 |
| 05/08/02 | Statement | Itemization of legal services; $2,765.85 drawn down. | -0- | -0- | 43 |
| 06/13/02 | Statement | Itemization of legal services; $7,195.16 drawn down. | -0- | -0- | 43 |
| 09/04/02 | E-mail from Hooker | Bring in $10,000 to replenish retainer and $11,000 more. | -- | -- | 16 |
| 09/04/02 | E-mail from Debtor | Deceased brother's estate owes me $15,000. Please be patient for 45 days. | -- | -- | 16 |
| 09/13/02 | Statement | Itemization of legal services. | $12,696.02 | $2,806.63 (60)<br>5,306.36 (30) | 43 |
| 10/01/02 | E-mail from Debtor | All I can get now is $1,000 until brother's house sale closes. | $12,696.02 | $2,806.63 (60)<br>5,306.36 (30) | 17 |
| 10/01/02 | E-mail from Hooker | "You are $20,000 down on fees . . . I am worried . . . we do need to get this resolved." | $12,696.02 | $2,806.63 (60)<br>5,306.36 (30) | 18 |
| 10/02/02 | E-mail from Debtor | "I have never been a deadbeat and I don't see me becoming one." | $24,758.59 | $2,806.63 (60)<br>5,306.36 (30) | 18 |
| 10/03/02 | Statement | Itemization of legal services. | $24,758.59 | $2,806.63 (60)<br>5,306.36 (30) | 43 |
| 10/04/02 | E-mail from Hooker | "I am really troubled by the comment you made about getting me paid in December. When we last talked about this you said you could bring things current the first week of October. We are now at $24,000. I cannot wait. We have to get this resolved or I have to get out of the case." | $24,758.59 | $2,806.63 (60)<br>5,306.36 (30) | 18 |
| 10/17/02 | E-mail from Debtor | I can liquidate assets, but this takes time. "I am borrowing against everything I have and some I don't have." | $24,758.59 | $2,806.63 (60)<br>5,306.36 (30) | 19 |

| | | | | | |
|---|---|---|---|---|---|
| 10/30/02 | E-mail from Hooker | As of October 18, 2002, you owe $37,266. Pay it by November 8, 2002, and make long-term arrangements or I will file a motion to withdraw. | $37,266.00 | -- | 20 |
| 11/04/02 | Letter from Hooker (Return Receipt) | ". . . you owe $42,349.12 . . . last payment July 12, 2002 when . . . balance was $2,806.63." Pay $42,349.12 by November 8, 2002, or I will file withdrawal motion. | $43,349.12 | -- | 21 |
| 11/05/02 | E-mail from Hooker | Adjustment to billing, reducing it to $35,036.62. | $35,036.62 | $2,806.63 (90)<br>5,306.36 (60)<br>16,645.00 (30) | 22 |
| 11/05/02 | Statement (09/30-10/31/02). | Itemization of legal services | $35,036.62[2] | $2,806.63 (90)<br>5,306.36 (60)<br>16,645.00 (30) | 43 |
| 11/13/02 | E-mail from Debtor | "I am working on raising the necessary resources . . ." | $35,036.62 | $2,806.63 (90)<br>5,306.36 (60)<br>16,645.00 (30) | 22 |
| 11/19/02 | E-mail from Debtor | Complaining about expert witness "gravy train" and threatening not to pay them unless "they . . . produce basic positive results." | $35,036.62 | $2,806.63 (90)<br>5,306.36 (60)<br>16,645.00 (30) | 23 |
| 11/22/02 | Letter from Hooker | Agrees to prepare and to take assignment of insurance proceeds, note and Deed of Trust. Withdrew motion to withdraw and continues representation.[3] | -- | -- | 24 |
| 01/20/03 | E-mail from Hooker | Last July (2002), you said you wouldn't pay fees unless you got results you wanted. Let's work out some payment arrangement. | -- | -- | 25 |
| 01/20/03 | E-mail from Debtor | "I have nothing right now to pay you . . . ." | -- | -- | 26 |

[2] This figure was adjusted downward by Mr. Hooker. See Ex. 22. No additional payments were made.

[3] However, Mr. Hooker testified that he never got around to preparing these documents.

| | | | | | |
|---|---|---|---|---|---|
| 01/29/03 | E-mail from Hooker | We will start work on the motion to withdraw tomorrow. | -- | -- | 28 |
| 01/30/03 | Motion to Withdraw | "Through no fault of his own, Mr. Hinrichs has been unable to pay the fees and expenses of the defense of this case." | -- | -- | 29 |
| 03/04/03 | Statement (01/22-02/24/03) | Itemization of legal services. | $86,215.91 | $24,758.59 (120)<br>10,278.03 (90)<br>42,108.79 (30) | 43 |
| 04/15/03 | Statement (03/31-04/15/03) | Itemization of legal services. | $86,231.38 | $35,036.62 (120)<br>42,108.79 (60)<br>9,070.50 (30) | 43 |

On May 23, 2003, Mr. Hooker filed a civil suit, for breach of contract, against the Debtor in Pima County Superior Court. (Ex. 33.) Summary judgment in Mr. Hooker's favor was rendered April 20, 2004. (Ex. 35.)

The Debtor filed his chapter 7 bankruptcy petition on April 30, 2004. In it, he listed assets of $108,621.16 and liabilities of $203,882.00

Five months earlier, on December 9, 2003, a final accounting was rendered in the Debtor's brother's estate. (Ex. 34.) The Debtor received a $6,000 distribution. (Ex. 34.) No portion of this amount was paid to Mr. Hooker because, the Debtor testified, that amount was small in relation to the entire Hooker debt, and he used it to pay other bills.

In this bankruptcy litigation, part of Mr. Hooker's lawsuit also seeks to hold the Debtor accountable for either a false oath or a failure to satisfactorily explain a loss of assets or a deficiency of assets to meet liabilities. These complaints fall into three categories:

1. Brother's estate--failure to disclose.
2. Website--not listed in schedules.
3. Income for wireless equipment installed in home--not disclosed.

## IV. DISCUSSION

### A. 11 U.S.C. § 523(a)(2)(A) - Fraud or Intentional Misrepresentation

Section 523(a)(2)(A) excepts from discharge any debt obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Plaintiff has the burden of proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287 (1991); *In re Harmon*, 250 F.3d 1240 (9th Cir. 2001).

Courts within the Ninth Circuit have employed a five-prong test for determining whether a debt is nondischargeable under § 523(a)(2)(A). *In re Hashemi*, 104 F.3d 1122, 1125 (9th Cir. 1996); *In re Britton*, 950 F.2d 602, 604 (9th Cir. 1991). Plaintiff must demonstrate each of the following elements:

1. Debtor made representations. Section 523(a)(2)(A) covers both affirmative representations and omissions if such omissions concern material facts and Debtor was under a duty to disclose such facts. *In re Harmon*, 250 F.3d 1240, 1246 (9th Cir. 2001). Material facts are those that a reasonable person would consider important in connection with determining a course of action. *In re Apte*, 96 F.3d 1319, 1323 (9th Cir. 1996).
2. Debtor knew such representations were false at the time he made them.
3. Debtor made such representations with the intention and purpose of deceiving Plaintiff. Intent to deceive is a question of fact and may be inferred if the surrounding facts and circumstances present a picture of deceptive conduct. *In re Kennedy*, 108 F.3d 1015, 1018 (9th Cir. 1997); *In re Smith*, 232 B.R. 461, 466 (Bankr. D. Id. 1998).

4. Plaintiff justifiably relied on such representations. Plaintiff's reliance must be justifiable. Although objective reasonableness is a factor in determining justifiable reliance, the standard is a subjective one that also takes in account the knowledge and relationship of the parties. In making a determination of justifiable reliance, the court "must look to all of the circumstances surrounding the particular transaction, and must particularly consider the subjective effect of those circumstances upon the creditor." *In re Kirsh*, 973 F.2d 1454, 1460 (9th Cir. 1992).

5. Plaintiff sustained the alleged loss and damage as the proximate result of the representations having been made.

## B. 11 U.S.C. § 523(a)(2)(B) - False Writing

This nondischargeable cause of action relates to circumstances where one uses a false writing concerning his financial condition to induce another into parting with goods or services.

Each of the elements of § 523(a)(2)(B) must be proven by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287 (1991).

A creditor must prove that the debt was obtained by:

(B) the use of a statement in writing;

(I) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for money, property, services or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

11 U.S. C. § 523(a)(2)(B). These elements are explained by the cases in the following ways:

1. Statement in Writing. This element requires a writing, which must be either written by the debtor, signed by the debtor, or written by someone else but adopted and used by the debtor. *See Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85 (6th Cir. 1993); *Engler v. Van Steinburg*, 744 F.2d 1060 (4th Cir. 1984).

2. Material Falsity. A statement is materially false "if it paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *In re Danenberg*, 37 B.R. 267, 271 (Bankr. D. Mass 1983), *citing In re Hunt*, 30 B.R. 425, 440 (Bankr. M.D. Tenn. 1983).

3. Respecting Debtor's or Insider's Financial Condition. Section 523(a)(2)(B) does not cover every material statement of fact made in writing to the creditor to induce the credit; it is confined in its application to statements about the financial condition of the debtor.

4. Reliance. The provision is explicit that the creditor must not only have relied on a false statement in writing, but the reliance must have been reasonable. *First Nat'l Bank of Lansing v. Kreps (In re Kreps)*, 700 F.2d 372 (7th Cir. 1983). The determination of the reasonableness of a creditor's reliance on a debtor's false statement in writing is judged in light of the totality of the circumstances, taking into consideration (1) whether there had been previous business dealings between the debtor and the creditors; (2) whether there were any warnings that would have alerted a reasonably prudent person to the debtor's misrepresentation; (3) whether minimal investigation would have uncovered the inaccuracies in the

debtor's financial statement; and (4) the creditor's standard practices in evaluating creditworthiness and the standards of custom of the creditor's industry in evaluating creditworthiness.

5. Caused to be Made or Published with Intent to Deceive. Publication is used in the same sense that it is used in defamation cases, that is, made known to any person other than the person defamed. The statement need not be made directly to the creditor or the creditor's representative in order for the debt to fall within the exception to discharge. It also must be shown that the debtor's alleged false statement in writing was either knowingly false or made so recklessly as to warrant a finding that the debtor acted fraudulently. *In re Batie*, 995 F.2d 85 (6th Cir. 1993).

**C. Section 727(a)(4)(A) - False Oath or Account**

This section of the Code permits a court to deny a debtor's entire discharge if it is proven that the debtor knowingly and fraudulently made a false oath or account.

The Plaintiff has the burden of proof on the elements necessary to sustain the charge of false oath. FED. R. BANKR. P. 4005. The elements are:

1. False Oath or Account Must be Knowing and Fraudulent. A debtor may be denied a discharge if he knowingly and fraudulently, in or in connection with the case, made a false oath or account. An unsworn declaration under penalty of perjury is a permissible substitute for, and has the same effect, a verification under oath. 28 U.S.C. § 1746.

2. False Oath or Account Must be Material. The subject matter of a false oath is material and warrants a denial of discharge if it related to the debtor's business transactions, or if it concerns the discovery of assets,

business dealings, or the existence or disposition of the debtor's property. *In re Weiner*, 208 B.R. 69, 72 (9th Cir. BAP 1997), *citing Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984).

3. Oath Includes Statements in Schedules and at Examination.

**D. Section 727(a)(5) - Failure to Satisfactorily Explain Losses**

This portion of the Code authorizes denial of discharge if it is proven that a Debtor has failed to satisfactorily explain any loss of assets or deficiency of assets to meet the Debtor's liabilities. This section is broad enough to include any unexplained disappearance or shortage of assets. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616 (11th Cir. 1984). The same element of intent, which is necessary in §§ 727(a)(2), (3), and (4) is not required. *Nof v. Gannon (In re Gannon),* 173 B.R. 313 (Bankr. S.D.N.Y. 1994).

Plaintiff has the burden of proving the objection. FED. R. BANK. P. 4005. Once the objector has introduced some evidence of the disappearance of substantial assets or of unusual transactions, the debtor must satisfactorily explain what happened. *In re Chalik*, 748 F.2d 616 (11th Cir. 1984).

A satisfactory explanation has not been definitively defined, but the debtor probably must explain the losses or deficiencies in such manner as to convince the court of good faith and businesslike conduct.

## V. APPLICATION OF THE LAW TO THE FACTS

### A. Section 523(a)(2)(A) - Fraud and Misrepresentation

The difficulty with the Plaintiff's position is that he is attempting to establish an affirmative fraud or misrepresentation for what is, in essence, nothing more than a breach of a written contract.

While the Debtor may have been more persuasive than many clients in getting his attorney to remain in the criminal case, in the final analysis, it is more clear that it was the Plaintiff-attorney who allowed the large bill to be run up, and equitable principles of estoppel prevent him from laying the blame upon the Debtor. The attorney was in the unique position of being able to stop the representation at any point, but elected to stay in the case. This he did even at the expense of running up his own credit line, and reducing his staff in order to remain with the Debtor's criminal case.

From the outset, the Plaintiff-attorney had a written fee agreement that clearly laid out the parties' agreement--the Debtor was to replenish the retainer back to the $10,000 level each time it was reduced to $3,000. As any attorney in private practice knows, or should know, clients sometimes have difficulty meeting their financial obligations on a timely basis. These types of circumstances do not amount to affirmative fraud; clients can be optimistic to a fault. It is the attorney's job to remain vigilant to his or her own internal controls on finances.

In this case, the parties were in constant communication concerning the Debtor's outstanding fees. The Plaintiff-attorney here was truly generous to a fault. But in the final analysis, the court was not left with the impression that an affirmative fraud was proven or even occurred.

As the U.S. Supreme Court noted in *Fields v. Mans*, 516 U.S. 59 (1995), an aggrieved party must have justifiably relied on the alleged misrepresentations of a debtor. Here, the court must find and conclude that any reliance placed upon the Debtor's ongoing and always incorrect estimates of the source and time of payments was not justified.

The Debtor testified that he paid the Plaintiff approximately $17,000. The Plaintiff still has an $86,000 balance. That means the total representation's cost was $103,000. At the outset, the attorney felt the cost of the representation was going to be in the $25,000 range. What accounted for the four-fold increase is not entirely clear, but the attorney had numerous opportunities to "stop the bleeding."

The Supreme Court laid out the test:

> Although the plaintiff's reliance on the misrepresentation must be justifiable . . . this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conducts to all cases. . . . Justifiability is not without some limits, however. As a comment to § 541 [Restatement (Second) of Torts (1976)] explains, a person is 'required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'

*Field*, *id.*, at 70-71. In this case, in addition to a finding that it was not proven, by a preponderance of the evidence, that the Debtor made affirmative misrepresentations or was guilty of committing fraud, it is also clear that the Plaintiff did not justifiably rely on the Debtor's protracted promises for payment of the accruing legal bills. At all times, Plaintiff was in a position to protect himself from what he could see happening before his eyes, yet he inexplicably continued to provide legal services, even at the expense of watching his firm die a slow death.

Plaintiff did not prove, by a preponderance of the evidence, that the Debtor committed intentional misrepresentations or fraud, or that he justifiably relied on the Debtor's promises of payment. Judgment will, therefore, be entered in favor of the Debtor-defendant on this theory.

### B. Section 523 (a)(2)(B) - Writings

In the instant case, the only writings were the e-mails, wherein the Debtor promised payment either by an income tax refund, a house sale or refinance, distribution from his brother's estate, or insurance proceeds from a July, 2002, auto accident. There was no evidence that Mr. Hooker asked to see the tax return or the sale documents, or actually took assignments of such insurance proceeds. There was a time, also, when the Debtor promised to pay Mr. Hooker by a refinancing of his Benson home, but Hooker never prepared nor obtained a deed of trust which would have protected him.

Because the facts show that the Debtor became seriously delinquent shortly after the initial retainer was used up, the court must conclude that Mr. Hooker did not reasonably rely on these promises, but instead continued working for the Debtor for reasons other than financial ones. A reasonably diligent attorney confronted with a non-paying client who was in breach of his retainer/fee agreement would file a motion to withdraw, not allow the client to string him out, month after month, on hollow promises. Hooker was, or should have been, on notice that the Debtor's promises were without substance. While the court can appreciate an attorney's loyalty to a client who is in a financial or legal bind, the attorney's decision to continue representation under such circumstances does not equate to a non-dischargeable false statement in writing by the Debtor. Rather, the decision to continue here was a decision solely made by the attorney and was within his control. That decision was not reasonable considering all the circumstances of the case.

Accordingly, the court finds and concludes that Mr. Hooker failed to meet his burden of proof under § 523(a)(2)(B).

### C. Section 727 - In General

The provisions of the Code for denying a discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor. *Consumers Oil Co. v. Adeeb (In re Adeeb)*, 787 F.2d 1339 (9th Cir. 1986).

The burden of proving a ground for objection to discharge is on the objector. Most courts have held that this burden may be met under a preponderance of the evidence standard. *See, e.g., Peterson v. Scott (In re Scott)*, 172 F.3d 959 (7th Cir. 1999); *Farouki v. Emirates Bank Int'l Ltd.*, 14 F.3d 244 (4th Cir. 1994); *Barclays/Am. Business Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389 (6th Cir. 1994); *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174 (5th Cir. 1992); *First Nat'l Bank of Gordon v. Serafini (In re Serafini)*, 938 F.2d 1156 (10th Cir. 1991).

The burden of proof, by an ordinary preponderance of the evidence, is on the party objecting to debtor's discharge. *In re Bowman* , 173 B.R. 922, 925 (9th Cir. BAP 1994); *citing In re Lawler,* 141 B.R. 425, 429 (9th Cir. BAP 1992); *In re Serafini*, 938 F.2d 1156, 1157 (10th Cir. 1991).

With these principles in mind, we turn to each of Plaintiff's legal theories for denial of discharge.

#### 1. Section 727(a)(4)(A) - False Oath

Mr. Hooker maintains that the Debtor gave a false oath in three specific areas:

(a) Status of brother's estate;

(b) Website; and

(c) Income from equipment.

The court will discuss each in turn.

(a) Brother's Estate. As for the receipt of the $6,000 from his brother's estate on or about December 9, 2003, the court notes that the Debtor filed chapter 7 four and one-half months thereafter, on April 30, 2004. His statement of affairs did not contain any questions about monies received from a decedent's estate, and since the estate had been distributed, question 19 on Schedule B (Personal Property), noting "none," was accurate. The Debtor listed his bank accounts, and testified that he used the $6,000 to pay bills prior to filing. No evidence refuted this, and the Debtor's explanation appeared credible. (Ex. 36.) No false oath was proven relative to this issue.

(b) Website. The website was listed, or included within, the business information disclosed in question 18, Statement of Affairs, when the Debtor listed his business of "Integrated Elements Unlimited." (Ex. 36.) This information was, therefore, disclosed to the Trustee and the Debtor's creditors. An examination as to the details of this business would have revealed its website and marketing tactics. No willful omission or failure to disclose was evident as to this item.

(c) Equipment. This information was also disclosed in response to question 14 in the Statement of Affairs. This was listed as property "held for another," and contained sufficient information to enable the Trustee or a creditor to inquire fully. This was not proven to be in the nature of a false oath.

Accordingly, the Plaintiff's cause of action pursuant to § 727(a)(4)(A) did not rise to the level of the burden of proof required to nullify the Debtor's right to a discharge. This claim will be decided favorably to the Debtor.

**2. Section 747(a)(5) - Failure to Satisfactorily Explain Losses**

The Plaintiff raised no issues for this cause of action other than those raised above, for § 727(a)(4). For the same reasons as set forth above, the Plaintiff failed to meet the necessary burden of proof. Accordingly, this cause of action will be dismissed.

## VI. TRUSTEE'S POSITION

Oddly, the Chapter 7 Trustee, a week before the date of trial, filed a "Trustee Statement of Position." The Trustee has not intervened in this adversary proceeding, and is not formally a party thereto. No motion was filed to join him as a party or to allow him to intervene. *See* FED. R. BANKR. P. 18, 19, and 24. Accordingly, the Trustee's pleading is hereby stricken.[4]

## VII. RULING

Pursuant to the foregoing discussion, this court will enter a judgment which:

1. Finds in favor of the Debtor and against the Plaintiff on the § 523(a)(2)(A) claim made against the Debtor, and will dismiss that action, with prejudice;
2. Finds in favor of the Debtor and against the Plaintiff on the § 523(a)(2)(B) claim made against the Debtor, and will dismiss that action, with prejudice;
3. Finds in favor of the Debtor and against the Plaintiff on the § 727(a)(4) claim made against the Debtor, and will dismiss that action, with prejudice;
4. Finds in favor of the Debtor and against the Plaintiff on the § 727(a)(5) claim made against the Debtor, and will dismiss that action, with prejudice;

---

[4] Neither did the Trustee appear personally at trial and move to be added as a party.

5. Will order that each side bear their own fees and costs; and

6. Will strike the Trustee's Statement of Position.

DATED: April 21, 2005.

JAMES M. MARLAR
UNITED STATES BANKRUPTCY JUDGE

COPIES served as indicated below this 21 day of April, 2005, upon:

Merlin Grover Hinrichs
769 East Country Club Drive
Benson, AZ 85602
U.S. Mail

Eric Slocum Sparks
Law Office of Eric Slocum Sparks, P.C.
110 South Church Ave., #2270
Tucson, AZ 85701-3031
Attorneys for Plaintiff
Email eric@ericslocumsparkspc.com

Stanley J. Kartchner
7090 N. Oracle Rd., #178-204
Tucson, AZ 85704
Chapter 7 Trustee
Email statebar@kartchner.bz

Office of the United States Trustee
230 North First Avenue, Suite 204
Phoenix, AZ 85003-1706
U.S. Mail

By M B Thompson
Judicial Assistant